UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
ALTON HURD,                                          :
                 Plaintiff,           :        04 Civ. 998 (PAC)
                                 :
   -  against -                          :        OPINION
                                 :        AND ORDER
NEW YORK HEALTH & HOSPITALS CORP.,     :
VINCENT MIRDITA, CAROLINE BROZAK,      :
and YOLANDO RUSSELL,                   :
                 Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

            HONORABLE PAUL A. CROTTY, United States District Judge:

            Plaintiff Alton L. Hurd ("Hurd") brings claims pursuant to Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq. ("Title VII"), the Age

Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. ("ADEA"), 42 U.S.C. §

1981, New York Executive Law §§ 290, et seq., and New York City Administrative Code

§§ 8-101, et seq. against Defendants New York Health & Hospitals Corporation

("HHC"), Vincent Mirdita ("Mirdita"), Caroline Brozak ("Brozak"), and Yolando Russell

("Russell").  Hurd alleges he was denied promotion on the basis of his race, national

origin, age and/or gender.  He further alleges Defendants retaliated against him for filing

a charge with the Equal Employment Opportunity Commission ("EEOC").  Defendants

now move for summary judgment.  The motion is granted.

## FACTUAL HISTORY[1]

### I.  The Parties

            Hurd is a 50-year-old black male of Jamaican national origin with a

Bachelor of Science degree in Health Services Administration from CUNY Lehman

---

[1] The facts presented herein are derived from the Amended Complaint and the evidentiary material
produced by the parties in support of their respective positions. Except where quoted, no further citation
will be made.  The facts are undisputed unless described as "alleged" or otherwise so indicated.

College.  From September 1998 through the entire period relevant to this matter, he was employed by HHC at the Jacobi Medical Center ("JMC") as a Hospital Care Investigator ("HCI") in the Finance Department, responsible for ensuring that JMC received payment for all services provided.  From August 1995 to September 1998, he was a clerical worker at JMC, and prior to his tenure at JMC he spent three months as a Sales Representative for Universal Health Plan selling managed care plans to Medicaid recipients.  As an HCI, Hurd received the highest possible rating of "Outstanding" on his September to September evaluations for 1999-2000, 2000-2001, and 2001-2002.

Brozak, a white female, was Deputy Executive Director (Ambulatory Care Services) of JMC during the relevant period and, among other duties, oversaw the Managed Care Unit.  Brozak's husband immigrated to the United States from Yugoslavia.

Mirdita, a white male, was Director of the Patient Accounts Division of the JMC Finance Department, in which Hurd was employed.  Mirdita is originally from Montenegro, then a constituent republic of Yugoslavia.

Russell is a black female of non-Jamaican origin, and at all relevant times was Chief Executive of the JMC Human Resources Department.


**II.  Denial of Promotions**

Hurd applied for four positions within JMC: (1) Coordinating Manager Level A in the Managed Care Department; (2) Coordinating Manager Level A in the Finance Department; (3) Cobra-Community Coordinator in the HIV Services Department; and (4) Cobra-Coordinating Manager Level A in the HIV Services

Department.  Hurd claims he was denied promotion on each occasion because of discrimination.

**A. Coordinating Manager in Managed Care**

Hurd applied for the Coordinating Manager position in Managed Care on or about April 2, 2002, and was interviewed on or about April 23 by Richard Bernstock ("Bernstock").  The posted requirements of the position included a bachelor's degree in one of a variety of fields generally related to health administration and three years of general experience in a relevant field, or "a satisfactory equivalent combination of training, education and experience." Declaration of Jason R. Bogni, Exhibit E.  Leonora Lulaj ("Lulaj"), a white female originally from Montenegro who had been an HCI since March 2000, was ultimately appointed to the position.

*Lulaj's Qualifications*

Lulaj had a Montenegrin high school diploma with a major in accounting and finance, but no college degree.  She received a rating of "Satisfactory," the standard rating, on her March 2000 to September 2000 evaluation and her September 2000 to March 2001 evaluation.  On her March 2001 to March 2002 evaluation, she received a "Satisfactory Plus" rating.  Before being hired at JMC, Lulaj was Assistant Health Care Program Planner Analyst at North Central Bronx Hospital from October 1995 to March 2000, responsible for "[ensuring] smooth and efficient operations of [the] managed care office." Declaration of Jason R. Bogni, Exhibit I.  Additionally, from January to October 1995 Lulaj was an enrollment representative and senior enrollment representative at

Metroplus Health Plan, first enrolling and then supervising others in enrolling Medicaid recipients in managed care plans.

Bernstock testified that he chose Lulaj over Hurd because of her extensive experience in managed care, and because Hurd presented poorly during his interview, seeming tired, unenthusiastic and bland.  Bernstock also testified that after he interviewed the candidates and decided on Lulaj, he discussed the matter with Brozak.  He did not recall any specific input provided by Brozak, except that she approved his selection. Brozak testified that after the interviews they discussed the candidates, including Lulaj. In particular they discussed her work ethic, knowledge, and attendance because Lulaj had worked with Brozak as an HCI.  In addition, Brozak testified that they might have spoken of her lack of a college degree.

**B.  Coordinating Manager in Finance**

Hurd applied for this position on or about April 5, 2002, and was interviewed by Jay Weinman ("Weinman"), the Deputy Chief Financial Officer, on or about April 15, 2002.  Maritza Rodriguez ("Rodriguez") was ultimately selected for the position.

Weinman declares that Rodriquez was chosen because she had worked closely during the prior year with Weinman and Nancy Guzman ("Guzman"), the Chief Financial Officer, gaining grant administration experience needed in the position, and showing great ability with the necessary functions of Microsoft Excel and other computer applications.  Weinman further declares that Hurd lacked experience in grant administration and the preferred level of Excel experience.  The contemporaneous

interview log for the position notes Hurd as having "limited computer skills." Declaration of Jason R. Bogni, Exhibit N.

Hurd alleges that Guzman selected Rodriguez both because Rodriguez was, like Guzman, Hispanic, and because Hurd had reported Guzman to the Director of the Hospital for smoking in her office. He further alleges that Weinman never asked him questions about his experience using Excel during his interview, and that in fact he used the program regularly.

**C. Cobra-Community Coordinator & Cobra-Coordinating Manager in HIV Services**

Hurd applied for two positions within the HIV Services Department in the summer of 2002: (1) the Cobra-Community Coordinator position on or about June 26, 2002; and (2) the Cobra-Coordinating Manager position on or about July 1, 2002. On November 14, 2002, the Manager vacancy was reclassified as a second Coordinator vacancy. Hurd alleges without evidentiary basis that it was reclassified as "cover" for denying him the job. Daniel Agosto and Secondido Fernandez ("Agosto and Fernandez") were selected for the positions.

Christine McNaughton ("McNaughton"), who interviewed Hurd on or about July 15, 2002, declares that she selected Agosto and Fernandez based on their prior experience with HIV patients and issues. Hurd admits that McNaughton had no discriminatory animus towards him, but asserts without any apparent factual basis that the named Defendants blocked her from appointing him to the position. McNaughton denies this.

**III. Allegedly Retaliatory Actions**

Hurd filed a charge of discrimination against JMC with the EEOC on September 10, 2002.[2]  JMC was notified of the complaint on September 24, 2002, and on February 12, 2003 scheduled interviews with Brozak, Russell, and Mirdita.  Brozak was notified that she would be interviewed at some point between February 12, 2003 and March 25, 2003, and was ultimately interviewed by an EEOC investigator on April 28, 2003.  Hurd alleges that a series of actions taken by JMC and the named Defendants after the EEOC charge were retaliatory.

*Withholding of Pay*

On July 14, 2003, one of Hurd's supervisors, George Phil Blount ("Blount") suspended Hurd without pay for four hours due to alleged misconduct.  After Hurd's union filed a grievance, the matter was resolved by the reimbursement of Hurd's pay on October 6, 2003.

*Rejection for Assistant Director (Hospitals) in Managed Care Position*

Hurd applied for the Assistant Director position on July 8, 2003 and was interviewed by Laurie Simowitz ("Simowitz") on July 28, 2003.  Maida Larriuz was selected for the position.  Simowitz acknowledges that Brozak was her supervisor at the time, but states that she did not consult with Brozak while filling the position.[3]

---

[2] None of the individual Defendants were mentioned in the charge.
[3] Hurd argues that Brozak intervened to deny him the position, citing his own testimony.  His only personal knowledge of that alleged fact, however, is a statement allegedly made to him by a co-worker, Tara

*Hostile Work Environment Allegations*

Hurd asserts that on December 11, 2003 Joseph Lupo ("Lupo"), his supervisor, read to others in the office from a private note by a psychological counselor treating Hurd; and that Lupo referred to him as a "sick nut" on February 15, 2004.  He also alleges that two magazines with pictures of half-naked women were placed on his desk on June 15, 2004, offending him as a born-again Christian.  It is undisputed that Hurd received a memo from Lupo on June 14, 2004 containing negative comments about his productivity, and an email from another supervisor, Linda C. White ("White"), containing similar complaints on June 25, 2004.  Hurd alleges that White relied on the July 14, 2003 incident with Blount and the productivity complaints of June 2004 to reduce Hurd's performance evaluation for 2003-2004 from the prior years' rating of "Outstanding" to "Satisfactory Plus."[4]

## DISCUSSION

### I. Summary Judgment Standard

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment should only be granted if "the nonmoving party 'has failed to make a

---

Graham.  Graham denies making such a statement.  As Hurd's testimony is clearly inadmissible hearsay, it cannot be considered as evidence in opposition to this motion.

[4] The 2003-2004 evaluation is not in the record, however, and the supporting exhibit cited by Hurd is a 2004-2005 evaluation of "Outstanding."

sufficient showing on an essential element of [his] case with respect to which [he] has the

burden of proof'." Berger v. United States, 87 F.3d 60, 64 (2d Cir. 1996) (quoting

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  In ruling on a motion for summary

judgment, the Court must "resolve all ambiguities and draw all factual inferences in favor

of the nonmoving party." McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (citation

omitted).  Summary judgment should not be granted where issues of fact are "genuine,"

and "a reasonable jury could return a verdict for the nonmoving party." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).


## II.  Discriminatory Denials of Promotion

On a motion for summary judgment, employment discrimination claims

brought under Title VII, 42 U.S.C. § 1981, the ADEA, and New York State and City

statutes are analyzed under identical standards. See, e.g., Patterson v. McLean Credit

Union, 491 U.S. 164, 186 (1989) (McDonnell Douglas framework applies to both § 1981

and Title VII); Weinstock v. Columbia Univ., 224 F.3d 33, 42 n. 1 (2d Cir. 2000)

("identical standards apply to employment discrimination claims brought under Title VII,

Title IX, New York Executive Law § 296, and the Administrative Code of the City of

New York"); Viola v. Philips Medical Sys. of N. Am., 42 F.3d 712, 715 (2d. Cir. 1994)

(ADEA claims follow the same analytical framework as Title VII cases).  Such claims

are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green,

411 U.S. 792 (1973).  First, the plaintiff must make out a prima facie case of retaliation.

Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996).  If the plaintiff presents

such a case, the burden shifts to the defendant to present admissible evidence of "a

legitimate, clear, specific and non-discriminatory reason" for its action. Id.  If the defendant meets this burden, the plaintiff must then demonstrate that there is sufficient evidence for a reasonable juror to find that the reason offered by the defendant is a mere pretext for discrimination. Id.

To make out a prima facie case of discriminatory denial of promotion the plaintiff must show (1) that he falls within the protected group, (2) that plaintiff applied for a position for which he was qualified, (3) that plaintiff did not receive promotion to the position and (4) that the failure to promote plaintiff occurred under circumstances giving rise to an inference of unlawful discrimination. See Viola, 42 F.3d at 716; Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001).  Defendants concede, for purposes of this motion only, that Hurd has sufficiently established the first three elements, leaving the sole dispute of whether the failure to promote Hurd raises an inference of discrimination.

**A.  Coordinating Manager Level A in the Managed Care Department**

Hurd has made out a prima facie case of discrimination in the selection of Lulaj for the Coordinating Manager in Managed Care position.  Lulaj had less time served as an HCI than Hurd, and had received only "Satisfactory" and "Satisfactory Plus" evaluation ratings compared to Hurd's "Outstanding" ratings.  Perhaps more importantly, Lulaj did not have a college degree, as generally required for the post.  This is sufficient to raise an inference that Lulaj was selected instead of Hurd based on impermissible consideration of his race, national origin, age or gender.

Defendants in turn articulate two legitimate justifications for their selection.  The first justification is that with five years of managed care experience compared to Hurd's three months, Lulaj was far more qualified for a managed care position.  The second justification is that Hurd interviewed poorly.  These justifications are clearly adequate; subjective impressions from an interview alone have been upheld as a valid justification absent a showing of discriminatory motive. See, e.g., Gavigan v. Clarkstown Cent. Sch. Dist., 84 F.Supp.2d 540, 548 (S.D.N.Y. 2000); Wechsler v. R D Management Corp., 861 F. Supp. 1153, 1160 (E.D.N.Y. 1994).

To demonstrate that Defendants' justifications are a pretext for discrimination, Hurd argues that Lulaj is the beneficiary of racial favoritism based on her Yugoslav origin.  This argument has shifted noticeably over the course of this case, but now apparently rests on the influence exerted on Brozak, who allegedly arranged for Lulaj to be selected, by her Yugoslav husband and Mirdita.  Hurd presents no evidence other than his own wholly speculative deposition testimony that Brozak, rather than Bernstock, chose Lulaj.  He relies on the same deposition testimony to show that Mirdita had any involvement in the decision.  "Plaintiff cannot create a genuine issue of fact solely by citing to his own deposition testimony.  Such bare, unsubstantiated allegations, which are not admissible at trial, do not establish a prima facie case of discrimination." Edwards v. City of New York, No. 03 Civ. 9407, 2005 U.S. Dist. LEXIS 34376, *43 (S.D.N.Y. December 16, 2005).  Hurd has no personal knowledge and relies only on the mere fact of the parties' and their spouses' nationalities to support his claim.  Clearly this is insufficient.

Additionally, Hurd argues that Lulaj was not merely less qualified than himself, but actively unqualified for the position due to her lack of a bachelor's degree, so that only discrimination can explain Defendants' decision to promote her. This argument is also unpersuasive. Lulaj's five years in managed care and two additional years of general health care experience are defensibly considered "a satisfactory equivalent combination of training, education and experience" to a bachelor's degree and three years of general experience in health care. In analyzing discriminatory hiring or promotion claims, the Court does not function as a Human Resources oversight committee, reviewing relative qualifications to determine if the "best" choice was made. See Byrnie, 243 F.3d at 103 ("the court must respect the employer's unfettered discretion to choose among qualified candidates"); see also Davis v. State Univ. of New York, 802 F.2d 638, 641 (2d Cir. 1986) (employer need not show "that it made the wisest choice, but only that the reasons for the decision were nondiscriminatory"). Hurd has presented no evidence that Lulaj's qualifications were considered inadequate by JMC in other circumstances, or are considered inadequate in the managed care field. In the absence of such a showing, Hurd's claim must be dismissed.

**B. The HIV Services Positions**

Hurd fails to meet his prima facie burden with respect to the positions in the HIV Services Department. To show that the Defendants' promotion decisions give rise to an inference of discrimination, Hurd merely asserts that he was better qualified for the positions than the individuals who were selected, despite presenting no evidence, even in his own deposition, regarding their qualifications. Further, he acknowledges that

McNaughton did not act out of prejudice.  Hurd relies again on his own conclusory deposition testimony to show that the individual Defendants forced McNaughton not to hire him.  This is inadequate to create an inference of discrimination.  Even if it did suffice to meet the prima facie burden, Hurd cannot rebut Defendants' legitimate justification that Agosto and Fernandez had HIV-related experience, while Hurd himself did not.

**C.  Coordinating Manager Level A in the Finance Department**

Similarly, Hurd fails to meet his prima facie burden in respect to the Finance Department position in light of his failure to make any showing of Rodriguez's qualifications and why they are inferior to his own.  His assertions regarding Guzman's favoritism towards Hispanics are conclusory and not based on personal knowledge, and his newly raised allegation of retaliation for his smoking complaint, even if cognizable as First Amendment retaliation, is irrelevant as the Complaint does not include a claim for First Amendment retaliation.  The fact that one of the decision-makers involved in a personnel selection is of the same gender and race as the employee selected is insufficient, standing alone, to create an inference of discrimination.  Even if it were sufficient, Hurd cannot rebut the legitimate justifications offered.

**IV. Retaliation**

To establish a prima facie case of retaliation, Plaintiff must show: "[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity

12

and the adverse employment action." Quinn v. Green Tree Credit Corp., 159 F.3d 759,

769 (2d Cir. 1998) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995)

(alteration in original)).  Causation can be shown either: (1) directly, through "evidence

of retaliatory animus directed against the plaintiff by the defendant"; or (2) indirectly,

through circumstantial evidence including that the protected activity was followed closely

by the adverse action. Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir.

2000).  All of Hurd's retaliation claims fail due to his failure to demonstrate a causal

connection between his EEOC charge against JMC and the alleged retaliatory actions.

       Hurd presents no direct evidence of animus and relies exclusively on the

temporal proximity of the EEOC complaint and the supposed retaliation.  The retaliatory

acts alleged did not occur until more than ten months after JMC was notified of the

EEOC charge.  In this Circuit, however, that is too long; even three months may be too

extended a period to support a retaliation claim. See, e.g., Hollander v. American

Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (passage of three months too long to

suggest a causal relationship between complaint and failure to provide good

recommendation).[5]  Nor is there any aspect of the facts alleged which could explain such

a delay. Compare Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45-46 (2d Cir. 1980)

(eight-month delay between EEOC complaint and retaliatory act explained by eight-

month job assignment already given prior to notice of complaint).  Hurd argues that the

relevant date for purposes of causation is not the date JMC was notified but the date

Brozak was informed that she would be interviewed.  He has not presented any

---

[5] The sole case on which Hurd relies, Cioffi v. Averill Park Central School Dist. Board of Ed., involved an initial protected activity occurring three months before the retaliation, but a final protected activity only three weeks before the retaliation. 444 F.3d 158, 168 (2d Cir. 2006).

admissible evidence to show that Brozak was responsible for any of the alleged

retaliatory acts, however, and so the date on which she was notified is irrelevant.[6]

## CONCLUSION

Defendants' motion is GRANTED and Plaintiff's claims are dismissed in

their entirety. The Clerk of the Court is directed to close out this case.

Dated: New York, New York
March 5, 2007

SO ORDERED

PAUL A. CROTTY
United States District Judge

**Emailed by Chambers on** 3/5/2007
**By: Marlon Ovalles, C.R.D**

---

[6] Even if Brozak's notification were taken as the relevant event, the first alleged retaliatory act would still have occurred almost four months later.